IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,                    CR 99-49-BR

            Plaintiff,                       OPINION AND ORDER

v.

PAUL TIMMINS,

            Defendant.


**KARIN J. IMMERGUT**
United States Attorney
**STEPHEN F. PEIFER**
Assistant United States Attorney
1000 S.W. Third, Suite 600
Portland, OR  97204
(503) 727-1012

            Attorneys for Plaintiff

**WILLIAM S. LABAHN**
132 East Broadway, Suite 331
Eugene, OR  97401
(541) 344-7004

            Attorney for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the government's Motion for Court Order Authorizing Involuntary Medication of Defendant (#123).

For the reasons that follow, the Court **GRANTS** the government's Motion, continues Defendant Dennis P. Timmins's commitment for treatment, and orders further proceedings to monitor the progress of Timmins's treatment and mental status as herein specified.

<u>**BACKGROUND**</u>

On January 27, 1999, Defendant Dennis P. Timmins was charged in a six-count Indictment with Bank Robbery, Armed Bank Robbery, and Use and Carrying of a Firearm During and in a Federal Crime of Violence.  On May 18, 1999, the Court committed Timmins to custody for observation and evaluation regarding his competence to stand trial.  On March 7, 2000, the Court conducted a competency hearing and found Timmins was competent to aid and to assist in his defense.

At some point prior to trial, the government offered Timmins a plea bargain.  Timmins rejected this offer and elected to go to trial.  On April 20, 2000, after a trial, a jury found Timmins guilty on five counts of the Indictment.   On July 11, 2000, the Court sentenced Timmins to 354 months in prison.  Timmins

appealed.

On November 25, 2003, the Ninth Circuit remanded the matter "for a determination of whether Timmins's decision to go to trial rather than to accept an offered plea bargain was made competently." The Ninth Circuit stated, "If Timmins is found competent upon remand, we AFFIRM his convictions. If Timmins is found incompetent upon remand, we VACATE his convictions." The Ninth Circuit noted if Timmins's convictions were vacated, the government "may legitimately choose to tender the same offer, to make a different offer, or to make no offer at all." The Court received the Mandate and Judgment on January 15, 2004.

On March 19, 2004, Timmins moved for authorization to obtain a psychiatric or psychological evaluation pursuant to the Ninth Circuit's remand. The Court granted Timmins's motion and appointed Esther Gwinnell, M.D., to make a psychiatric or psychological evaluation of Timmins. Dr. Gwinnell sent a copy of her report to the Court on June 24, 2004.

On July 26, 2004, the government filed a Motion for Pretrial Psychiatric Examination of Defendant for Competency to stand trial based in part on Dr. Gwinnell's report suggestion, *inter alia*, that Timmins presently was not competent. On August 19, 2004, the Court granted the government's Motion and ordered Timmins to be committed for a period not to exceed 30 days for completion of a psychiatric examination. The Court required the

government to provide a written evaluation report to the Court by September 23, 2004. After several extensions of time, the Court received the government's report as to Timmins's competency in December 2004 and based on that report ordered another competency hearing.

On January 12, 2005, the Court held the competency hearing. On January 14, 2005, the Court issued an Order in which it found Timmins was suffering from a mental disease or defect rendering him mentally incompetent to the extent that he presently was unable to understand the nature and consequences of the proceedings against him or presently to assist properly in his defense. Accordingly, the Court ordered Timmins committed for hospitalization and treatment for a reasonable period not to exceed four months to determine whether there was a substantial probability that in the foreseeable future Timmins would be competent to proceed with a trial. The Court further ordered the government to report its findings regarding Timmins's competency no later than April 1, 2005. At the government's request, the Court extended this deadline to June 10, 2005.

On April 15, 2005, the government filed the Motion at issue. On May 13, 2005, the Court held an evidentiary hearing on the issue of the appropriateness of involuntary medication and took the Motion under advisement. Before the hearing, Timmins's psychologist at Federal Medical Center Springfield (FMC

Springfield), David Mrad, advised Timmins of the hearing, but Timmins refused to attend. The Court, nonetheless, recessed the hearing and required Dr. Mrad to ask Timmins again whether he was willing to attend or to listen to the proceeding by telephone. Again, Timmins refused to attend or even to monitor the proceedings by telephone.

## **GENERAL FINDINGS**

The Court finds the following facts by clear and convincing evidence:

Timmins has a long history of mental disorder including paranoid schizophrenia. As of May 13, 2005, Timmins continues to suffer from paranoid schizophrenia. Timmins's symptoms include delusions of persecution and grandiosity. Although Timmins is able to understand how the judicial system works and the factual basis for his conviction, his delusional thought processes render him presently incapable of reasoning about these facts and presently incapable of making rational decisions based on information and advice. Indeed, Timmins's compromised mental state has to date effectively prevented the Court from conducting proceedings consistent with the Ninth Circuit's mandate.

Timmins remains in solitary confinement due to unresolved reports of alleged disciplinary incidents that occurred before his arrival at FMC Springfield. Timmins continues to be hostile

and argumentative, and it is questionable whether he would be safe in the general population as long as his present condition remains untreated.

Timmins's condition is one that typically would be treated with antipsychotic medication. Timmins, however, refuses to take any such medication because he does not believe he is psychotic or paranoid schizophrenic. Without antipsychotic medication, Timmins's prognosis is poor, and his condition will continue to deteriorate. Thus, Timmins is not progressing towards the degree of competency required to participate in further proceedings.

## STANDARDS

In *Sell v. United States*, the Supreme Court addressed the specific findings a court must make before it permits the government to administer medications involuntarily to a pretrial detainee for the purpose of restoring him to competency for trial. 123 S. Ct. 2174, 2184-85 (2003). The court must find: (1) defendant is accused of a serious crime, (2) defendant is substantially likely to be rendered competent to stand trial if the medication is administered and the medication is substantially unlikely to have side effects that interfere significantly with the defendant's ability to assist counsel in conducting a defense, (3) less intrusive measures such as the Court's exercise of its contempt power to encourage voluntary

medication or less intrusive treatments such as talk therapy "are
unlikely to achieve substantially the same results," and (4) the
administration of the medication is medically appropriate. *Id.*

"[T]he unique nature of involuntary antipsychotic medication
and the attendant liberty interest require that imposition of
such a condition occur only on a medically-informed record."
*United States v. Williams,* 356 F.3d 1045, 1056 (9th Cir. 2004).
*See also Sell,* 123 S. Ct. at 2184-85.


## **DISCUSSION**

As noted, the Court finds Timmins's mental state is not
improving nor is it likely to improve because he refuses to take
appropriate medication voluntarily to treat his condition of
paranoid schizophrenia.  The government seeks an order
authorizing Bureau of Prisons (BOP) treatment personnel to
administer appropriate antipsychotic medication to Timmins over
his objection in order to restore his competency to participate
in further proceedings as mandated by the Ninth Circuit.

Timmins opposes the government's Motion and also contends it
is beyond the scope of the Ninth Circuit's Remand.  In
particular, Timmins asserts he has a constitutionally protected,
due-process liberty interest in avoiding the unwanted
administration of antipsychotic medication and the government has
not met the factors set out in *Sell v. United States*, 123 S. Ct.

2174 (2003), to overcome that interest.

## I.   The Government's Motion Is Not Beyond the Scope of the Remand

As noted, the Remand from the Ninth Circuit directed the Court to make a determination as to whether Timmins's decision to go to trial rather than to accept an offered plea bargain was made competently.  Defense counsel contends Timmins need not be competent during the current proceedings because the remand is limited to Timmins's competency at the time of the plea offer. 18 U.S.C. § 4241(a), however, requires the Court to determine whether a defendant is able to understand the nature and consequences of the proceedings against him or to assist properly in his defense at any time "after the commencement of a prosecution for an offense and prior to the sentencing of the defendant."  In light of the Ninth Circuit's mandate, the current status of this case is one of "prior to sentencing."  The Court, therefore, finds Timmins must be able to participate competently in the proceedings on remand because they constitute a critical stage in the case, and Timmins's right to understand the nature and consequences of these remand proceedings is paramount. Accordingly, the Court concludes the government's Motion is not beyond the scope of the Remand, and it is necessary to balance Timmins's liberty interest in avoiding the involuntary administration of medication with Timmins's interest in being competent to understand the nature and consequences of these

8 - OPINION AND ORDER

proceedings.

## II. *Sell v. United States* Factors Applied to This Case

### A. Important Governmental Interests Are at Stake

Timmins contends the government has not shown it has an important interest at stake because it does not seek to medicate Timmins so that he will be competent to stand trial. Instead, Timmins argues, the government seeks to medicate Timmins so that he will be competent to participate in proceedings to determine whether he was competent in 2000 when he elected to go to trial rather than to enter into a plea agreement. Timmins also states he does not concede he was accused of a "serious" crime. Timmins, however, makes no argument regarding this point. Given the nature of the charges against Timmins and his sentence of 354 months, the Court finds Timmins was accused of a "serious" crime.

Timmins also contends the government has not decided whether it will retry him or offer him another plea bargain if his conviction is vacated. Thus, Timmins contends, the government has not shown it has an important interest at stake.

The Court, however, finds the government has an important interest in either re-trying Timmins or entering into a plea agreement with him sufficient to resolve this case. Timmins was convicted by a jury of several counts of Armed Bank Robbery. The Ninth Circuit did not find any error in the merits of that conviction. The Court, therefore, finds by clear and convincing

evidence that the government has an important interest in concluding Timmins's prosecution either by trial or plea agreement during these remand proceedings.

**B.    The Administration of the Antipsychotic Medication is Substantially Likely to Render Timmins Competent to Proceed**

Timmins contends the government has failed to meet the second prong of the *Sell* analysis because the government did not specify a concrete course of treatment such as a particular medication to be used, the dosages, etc.  In addition, Timmins contends the government has not shown the treatment would be substantially likely to render Timmins competent.

At the hearing, however, Robert Sarrazin, M.D., the psychiatrist at FMC Springfield who will treat Timmins, testified he would start Timmins on five milligrams of Zyprexa and move gradually to a daily dosage of 15 milligrams administered orally. Dr. Sarrazin would keep Timmins on this dosage for two to three weeks to determine whether it was having a therapeutic effect on Timmins.  If not, Dr. Sarrazin would increase the dosage to 20 milligrams once a day.  If this dosage did not produce therapeutic results, Dr. Sarrazin explained he would then put Timmins on Abilify, and he described a specific treatment plan using that drug.  Dr. Sarrazin also described a third alternative treatment plan using Resperdol if Abilify did not produce the desired results.

Dr. Sarrazin explained the common side effects of all of these medications are dry mouth, dry eyes, constipation, and sedation.  Dr. Sarrazin noted the procedure for avoiding sedative effects with any of these medications would be to give them at night so the sedative effects dissipate while Timmins slept.

More serious possible side effects include tartive dyskinesia and malignant hypothermia.  These side effects are rare, however, and  Dr. Sarrazin stated he would change Timmins's antipsychotic medication if Timmins suffered either of these side effects in response to the medication.

If Timmins refused oral medication, however, the BOP would have to administer antipsychotic medication haloperidol by injection.  Unfortunately, the three preferred drugs described only are available to take by mouth.  If it becomes necessary to inject medication into Timmins, different medications will be used.  In that event, Dr. Sarrazin will use haloperidol first.  Before administering haloperidol, however, the BOP would ask Timmins whether he would agree to take the injection voluntarily.  If Timmins refused, a forced cell team would be assembled, which would consist of correctional officers "suited up" in such a manner as to minimize harm to themselves and Timmins.  If after a second attempt is made to get Timmins to agree to take the medication voluntarily and Timmins again refuses, the forced cell team would enter Timmins's cell, hold him down, and maintain

control of him while they injected him with haloperidol.  A nurse would be present and would check Timmins at the end of the procedure to treat any injuries.  The procedure would be videotaped and reviewed by the executive staff at FMC Springfield.

The common side effects of haloperidol include light-headedness, dry mouth, constipation, and sedation.  Uncommon side effects include tartive dyskinesia and neuroleptic malignant syndrome.  As with administration of the other antipsychotics, Dr. Sarrazin would monitor Timmins for any signs of the more serious side effects or significant sedation and change medication if these side effects appeared.

The testimony is undisputed that the administration of antipsychotics as described by Dr. Sarrazin is substantially likely to render Timmins competent to participate in these proceedings.  The experts also agree that these medications are substantially unlikely to have side effects that will interfere significantly with Timmins's ability to assist counsel during these proceedings.

Accordingly, the Court finds by clear and convincing evidence that Timmins is substantially likely to be rendered competent to stand trial if the medication is administered and the medication is substantially unlikely to have side effects that interfere significantly with Timmins's ability to assist

counsel in conducting a defense.

**C.    Alternative, Less-intrusive Treatments Are Unlikely to Achieve Substantially the Same Results**

Drs. Mrad and Sarrazin agreed there are no alternative, less intrusive treatments that are likely to achieve substantially the same results.  Potential treatments such as group therapy or talk therapy are not likely to restore Timmins to competence. Moreover, Timmins's refusal to attend the evidentiary hearing or to listen to the proceedings by telephone despite urging by the Court and Dr. Mrad demonstrates that even a Court order backed by the contempt power of the Court requiring Timmins to take antipsychotic medication would not be effective.

The Court, therefore, concludes by clear and convincing evidence that there are not any alternative, less intrusive treatments likely to achieve substantially similar results.

**D.    Administration of Antipsychotic Mediation Is Medically Appropriate**

The Court notes all of the experts agree administration of antipsychotic medication such as Zyprexa is medically appropriate and necessary "to significantly further" the "significant government interest" in rendering Timmins competent to assist in the remand proceedings.  In addition, other possible methods are unlikely to achieve similar results.  Moreover, although Timmins also suffers from a thyroid condition, Dr. Sarrazin will monitor Timmins for adverse reactions that might affect that condition

and adjust his treatment plan accordingly.

The Court, therefore, finds by clear and convincing evidence that administration of antipsychotic medication as set out by Dr. Sarrazin at the hearing is in Timmins's best medical interest in light of Timmins's paranoid schizophrenia and his overall medical condition.

In summary, the Court concludes the government has satisfied all of the *Sell* factors.  The Court, therefore, grants authority to the BOP treatment personnel at FMC Springfield to administer antipsychotic medication to Timmins over his objection as follows:

1.   BOP treatment personnel must provide Timmins with a copy of this Opinion and Order; explain to him the potential side effects of Zyprexa, Abilify, and Resperdol; and advise him that the medication must be taken orally once a day.

2.   If Timmins refuses to take Zyprexa, Abilify, or Resperdol orally, BOP treatment personnel must then explain to Timmins the potential side effects of haloperidol and advise him that the medication is administered by injection once every ten days.

3.   BOP personnel must discuss haloperidol with Timmins on at least three separate days and must offer Timmins the opportunity to either take Zyprexa, Abilify, and Resperdol orally or to take haloperidol by injection voluntarily at the end of

each discussion.

4.  If Timmins does not agree voluntarily thereafter to take either the prescribed medications orally or haloperidol by injection, BOP treatment personnel are authorized to administer haloperidol by injection over Timmins's objection as long as medically appropriate and at no more than ten-day intervals.

5.  Before each potential involuntary administration of haloperidol, BOP treatment personnel must give Timmins the opportunity to agree to take the then-prescribed medication voluntarily before proceeding with involuntary injection procedures.

6.  BOP treatment personnel shall submit a written status report to the Court no later than July 22, 2005, concerning Timmins's response to the antipsychotic medications and the status of his treatment and mental health generally.

Accordingly, the Court continues Timmins's commitment pursuant to 18 U.S.C. § 4241(d)(2)(A) until 9:30 a.m., August 15, 2005, at which time the Court will conduct another hearing to assess the status of Timmins's treatment and to determine whether Timmins may be returned to the District of Oregon to participate in further proceedings.

## CONCLUSION

For these reasons, the Court **GRANTS** the government's Motion

for Court Order Authorizing Involuntary Medication of Defendant (#123), continues Timmins's commitment for treatment as set out in this Opinion and Order, and orders further proceedings to monitor the progress of Timmins's treatment and mental status as herein specified.

IT IS SO ORDERED.

DATED this 23rd day of May, 2005.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,                    CR 99-49-BR

                    Plaintiff,               OPINION AND ORDER

v.

PAUL TIMMINS,

                    Defendant.


**KARIN J. IMMERGUT**
United States Attorney
**STEPHEN F. PEIFER**
Assistant United States Attorney
1000 S.W. Third, Suite 600
Portland, OR  97204
(503) 727-1012

                    Attorneys for Plaintiff

**WILLIAM S. LABAHN**
132 East Broadway, Suite 331
Eugene, OR  97401
(541) 344-7004

                    Attorney for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the government's Motion for Court Order Authorizing Involuntary Medication of Defendant (#123).

For the reasons that follow, the Court **GRANTS** the government's Motion, continues Defendant Dennis P. Timmins's commitment for treatment, and orders further proceedings to monitor the progress of Timmins's treatment and mental status as herein specified.


## BACKGROUND

On January 27, 1999, Defendant Dennis P. Timmins was charged in a six-count Indictment with Bank Robbery, Armed Bank Robbery, and Use and Carrying of a Firearm During and in a Federal Crime of Violence. On May 18, 1999, the Court committed Timmins to custody for observation and evaluation regarding his competence to stand trial. On March 7, 2000, the Court conducted a competency hearing and found Timmins was competent to aid and to assist in his defense.

At some point prior to trial, the government offered Timmins a plea bargain. Timmins rejected this offer and elected to go to trial. On April 20, 2000, after a trial, a jury found Timmins guilty on five counts of the Indictment. On July 11, 2000, the Court sentenced Timmins to 354 months in prison. Timmins

appealed.

On November 25, 2003, the Ninth Circuit remanded the matter "for a determination of whether Timmins's decision to go to trial rather than to accept an offered plea bargain was made competently." The Ninth Circuit stated, "If Timmins is found competent upon remand, we AFFIRM his convictions. If Timmins is found incompetent upon remand, we VACATE his convictions." The Ninth Circuit noted if Timmins's convictions were vacated, the government "may legitimately choose to tender the same offer, to make a different offer, or to make no offer at all." The Court received the Mandate and Judgment on January 15, 2004.

On March 19, 2004, Timmins moved for authorization to obtain a psychiatric or psychological evaluation pursuant to the Ninth Circuit's remand. The Court granted Timmins's motion and appointed Esther Gwinnell, M.D., to make a psychiatric or psychological evaluation of Timmins. Dr. Gwinnell sent a copy of her report to the Court on June 24, 2004.

On July 26, 2004, the government filed a Motion for Pretrial Psychiatric Examination of Defendant for Competency to stand trial based in part on Dr. Gwinnell's report suggestion, *inter alia*, that Timmins presently was not competent. On August 19, 2004, the Court granted the government's Motion and ordered Timmins to be committed for a period not to exceed 30 days for completion of a psychiatric examination. The Court required the

government to provide a written evaluation report to the Court by September 23, 2004. After several extensions of time, the Court received the government's report as to Timmins's competency in December 2004 and based on that report ordered another competency hearing.

On January 12, 2005, the Court held the competency hearing. On January 14, 2005, the Court issued an Order in which it found Timmins was suffering from a mental disease or defect rendering him mentally incompetent to the extent that he presently was unable to understand the nature and consequences of the proceedings against him or presently to assist properly in his defense. Accordingly, the Court ordered Timmins committed for hospitalization and treatment for a reasonable period not to exceed four months to determine whether there was a substantial probability that in the foreseeable future Timmins would be competent to proceed with a trial. The Court further ordered the government to report its findings regarding Timmins's competency no later than April 1, 2005. At the government's request, the Court extended this deadline to June 10, 2005.

On April 15, 2005, the government filed the Motion at issue. On May 13, 2005, the Court held an evidentiary hearing on the issue of the appropriateness of involuntary medication and took the Motion under advisement. Before the hearing, Timmins's psychologist at Federal Medical Center Springfield (FMC

Springfield), David Mrad, advised Timmins of the hearing, but Timmins refused to attend. The Court, nonetheless, recessed the hearing and required Dr. Mrad to ask Timmins again whether he was willing to attend or to listen to the proceeding by telephone. Again, Timmins refused to attend or even to monitor the proceedings by telephone.

## GENERAL FINDINGS

The Court finds the following facts by clear and convincing evidence:

Timmins has a long history of mental disorder including paranoid schizophrenia. As of May 13, 2005, Timmins continues to suffer from paranoid schizophrenia. Timmins's symptoms include delusions of persecution and grandiosity. Although Timmins is able to understand how the judicial system works and the factual basis for his conviction, his delusional thought processes render him presently incapable of reasoning about these facts and presently incapable of making rational decisions based on information and advice. Indeed, Timmins's compromised mental state has to date effectively prevented the Court from conducting proceedings consistent with the Ninth Circuit's mandate.

Timmins remains in solitary confinement due to unresolved reports of alleged disciplinary incidents that occurred before his arrival at FMC Springfield. Timmins continues to be hostile

and argumentative, and it is questionable whether he would be safe in the general population as long as his present condition remains untreated.

Timmins's condition is one that typically would be treated with antipsychotic medication. Timmins, however, refuses to take any such medication because he does not believe he is psychotic or paranoid schizophrenic. Without antipsychotic medication, Timmins's prognosis is poor, and his condition will continue to deteriorate. Thus, Timmins is not progressing towards the degree of competency required to participate in further proceedings.

## STANDARDS

In *Sell v. United States*, the Supreme Court addressed the specific findings a court must make before it permits the government to administer medications involuntarily to a pretrial detainee for the purpose of restoring him to competency for trial. 123 S. Ct. 2174, 2184-85 (2003). The court must find: (1) defendant is accused of a serious crime, (2) defendant is substantially likely to be rendered competent to stand trial if the medication is administered and the medication is substantially unlikely to have side effects that interfere significantly with the defendant's ability to assist counsel in conducting a defense, (3) less intrusive measures such as the Court's exercise of its contempt power to encourage voluntary

medication or less intrusive treatments such as talk therapy "are unlikely to achieve substantially the same results," and (4) the administration of the medication is medically appropriate. *Id.*

"[T]he unique nature of involuntary antipsychotic medication and the attendant liberty interest require that imposition of such a condition occur only on a medically-informed record." *United States v. Williams,* 356 F.3d 1045, 1056 (9th Cir. 2004). *See also Sell,* 123 S. Ct. at 2184-85.


**<u>DISCUSSION</u>**

As noted, the Court finds Timmins's mental state is not improving nor is it likely to improve because he refuses to take appropriate medication voluntarily to treat his condition of paranoid schizophrenia. The government seeks an order authorizing Bureau of Prisons (BOP) treatment personnel to administer appropriate antipsychotic medication to Timmins over his objection in order to restore his competency to participate in further proceedings as mandated by the Ninth Circuit.

Timmins opposes the government's Motion and also contends it is beyond the scope of the Ninth Circuit's Remand. In particular, Timmins asserts he has a constitutionally protected, due-process liberty interest in avoiding the unwanted administration of antipsychotic medication and the government has not met the factors set out in *Sell v. United States*, 123 S. Ct.

2174 (2003), to overcome that interest.

## I.    The Government's Motion Is Not Beyond the Scope of the Remand

As noted, the Remand from the Ninth Circuit directed the Court to make a determination as to whether Timmins's decision to go to trial rather than to accept an offered plea bargain was made competently.  Defense counsel contends Timmins need not be competent during the current proceedings because the remand is limited to Timmins's competency at the time of the plea offer. 18 U.S.C. § 4241(a), however, requires the Court to determine whether a defendant is able to understand the nature and consequences of the proceedings against him or to assist properly in his defense at any time "after the commencement of a prosecution for an offense and prior to the sentencing of the defendant."  In light of the Ninth Circuit's mandate, the current status of this case is one of "prior to sentencing."  The Court, therefore, finds Timmins must be able to participate competently in the proceedings on remand because they constitute a critical stage in the case, and Timmins's right to understand the nature and consequences of these remand proceedings is paramount. Accordingly, the Court concludes the government's Motion is not beyond the scope of the Remand, and it is necessary to balance Timmins's liberty interest in avoiding the involuntary administration of medication with Timmins's interest in being competent to understand the nature and consequences of these

proceedings.

## II. *Sell v. United States* Factors Applied to This Case

### A.   Important Governmental Interests Are at Stake

Timmins contends the government has not shown it has an important interest at stake because it does not seek to medicate Timmins so that he will be competent to stand trial.  Instead, Timmins argues, the government seeks to medicate Timmins so that he will be competent to participate in proceedings to determine whether he was competent in 2000 when he elected to go to trial rather than to enter into a plea agreement.  Timmins also states he does not concede he was accused of a "serious" crime. Timmins, however, makes no argument regarding this point.  Given the nature of the charges against Timmins and his sentence of 354 months, the Court finds Timmins was accused of a "serious" crime.

Timmins also contends the government has not decided whether it will retry him or offer him another plea bargain if his conviction is vacated.  Thus, Timmins contends, the government has not shown it has an important interest at stake.

The Court, however, finds the government has an important interest in either re-trying Timmins or entering into a plea agreement with him sufficient to resolve this case.  Timmins was convicted by a jury of several counts of Armed Bank Robbery.  The Ninth Circuit did not find any error in the merits of that conviction.  The Court, therefore, finds by clear and convincing

evidence that the government has an important interest in concluding Timmins's prosecution either by trial or plea agreement during these remand proceedings.

**B.    The Administration of the Antipsychotic Medication is Substantially Likely to Render Timmins Competent to Proceed**

Timmins contends the government has failed to meet the second prong of the *Sell* analysis because the government did not specify a concrete course of treatment such as a particular medication to be used, the dosages, etc.  In addition, Timmins contends the government has not shown the treatment would be substantially likely to render Timmins competent.

At the hearing, however, Robert Sarrazin, M.D., the psychiatrist at FMC Springfield who will treat Timmins, testified he would start Timmins on five milligrams of Zyprexa and move gradually to a daily dosage of 15 milligrams administered orally. Dr. Sarrazin would keep Timmins on this dosage for two to three weeks to determine whether it was having a therapeutic effect on Timmins.  If not, Dr. Sarrazin would increase the dosage to 20 milligrams once a day.  If this dosage did not produce therapeutic results, Dr. Sarrazin explained he would then put Timmins on Abilify, and he described a specific treatment plan using that drug.  Dr. Sarrazin also described a third alternative treatment plan using Resperdol if Abilify did not produce the desired results.

Dr. Sarrazin explained the common side effects of all of these medications are dry mouth, dry eyes, constipation, and sedation. Dr. Sarrazin noted the procedure for avoiding sedative effects with any of these medications would be to give them at night so the sedative effects dissipate while Timmins slept.

More serious possible side effects include tartive dyskinesia and malignant hypothermia. These side effects are rare, however, and Dr. Sarrazin stated he would change Timmins's antipsychotic medication if Timmins suffered either of these side effects in response to the medication.

If Timmins refused oral medication, however, the BOP would have to administer antipsychotic medication haloperidol by injection. Unfortunately, the three preferred drugs described only are available to take by mouth. If it becomes necessary to inject medication into Timmins, different medications will be used. In that event, Dr. Sarrazin will use haloperidol first. Before administering haloperidol, however, the BOP would ask Timmins whether he would agree to take the injection voluntarily. If Timmins refused, a forced cell team would be assembled, which would consist of correctional officers "suited up" in such a manner as to minimize harm to themselves and Timmins. If after a second attempt is made to get Timmins to agree to take the medication voluntarily and Timmins again refuses, the forced cell team would enter Timmins's cell, hold him down, and maintain

control of him while they injected him with haloperidol.  A nurse would be present and would check Timmins at the end of the procedure to treat any injuries.  The procedure would be videotaped and reviewed by the executive staff at FMC Springfield.

The common side effects of haloperidol include light-headedness, dry mouth, constipation, and sedation.  Uncommon side effects include tartive dyskinesia and neuroleptic malignant syndrome.  As with administration of the other antipsychotics, Dr. Sarrazin would monitor Timmins for any signs of the more serious side effects or significant sedation and change medication if these side effects appeared.

The testimony is undisputed that the administration of antipsychotics as described by Dr. Sarrazin is substantially likely to render Timmins competent to participate in these proceedings.  The experts also agree that these medications are substantially unlikely to have side effects that will interfere significantly with Timmins's ability to assist counsel during these proceedings.

Accordingly, the Court finds by clear and convincing evidence that Timmins is substantially likely to be rendered competent to stand trial if the medication is administered and the medication is substantially unlikely to have side effects that interfere significantly with Timmins's ability to assist

counsel in conducting a defense.

**C.    Alternative, Less-intrusive Treatments Are Unlikely to Achieve Substantially the Same Results**

Drs. Mrad and Sarrazin agreed there are no alternative, less intrusive treatments that are likely to achieve substantially the same results.  Potential treatments such as group therapy or talk therapy are not likely to restore Timmins to competence. Moreover, Timmins's refusal to attend the evidentiary hearing or to listen to the proceedings by telephone despite urging by the Court and Dr. Mrad demonstrates that even a Court order backed by the contempt power of the Court requiring Timmins to take antipsychotic medication would not be effective.

The Court, therefore, concludes by clear and convincing evidence that there are not any alternative, less intrusive treatments likely to achieve substantially similar results.

**D.    Administration of Antipsychotic Mediation Is Medically Appropriate**

The Court notes all of the experts agree administration of antipsychotic medication such as Zyprexa is medically appropriate and necessary "to significantly further" the "significant government interest" in rendering Timmins competent to assist in the remand proceedings.  In addition, other possible methods are unlikely to achieve similar results.  Moreover, although Timmins also suffers from a thyroid condition, Dr. Sarrazin will monitor Timmins for adverse reactions that might affect that condition

and adjust his treatment plan accordingly.

The Court, therefore, finds by clear and convincing evidence that administration of antipsychotic medication as set out by Dr. Sarrazin at the hearing is in Timmins's best medical interest in light of Timmins's paranoid schizophrenia and his overall medical condition.

In summary, the Court concludes the government has satisfied all of the *Sell* factors. The Court, therefore, grants authority to the BOP treatment personnel at FMC Springfield to administer antipsychotic medication to Timmins over his objection as follows:

1.     BOP treatment personnel must provide Timmins with a copy of this Opinion and Order; explain to him the potential side effects of Zyprexa, Abilify, and Resperdol; and advise him that the medication must be taken orally once a day.

2.     If Timmins refuses to take Zyprexa, Abilify, or Resperdol orally, BOP treatment personnel must then explain to Timmins the potential side effects of haloperidol and advise him that the medication is administered by injection once every ten days.

3.     BOP personnel must discuss haloperidol with Timmins on at least three separate days and must offer Timmins the opportunity to either take Zyprexa, Abilify, and Resperdol orally or to take haloperidol by injection voluntarily at the end of

each discussion.

4.    If Timmins does not agree voluntarily thereafter to take either the prescribed medications orally or haloperidol by injection, BOP treatment personnel are authorized to administer haloperidol by injection over Timmins's objection as long as medically appropriate and at no more than ten-day intervals.

5.    Before each potential involuntary administration of haloperidol, BOP treatment personnel must give Timmins the opportunity to agree to take the then-prescribed medication voluntarily before proceeding with involuntary injection procedures.

6.    BOP treatment personnel shall submit a written status report to the Court no later than July 22, 2005, concerning Timmins's response to the antipsychotic medications and the status of his treatment and mental health generally.

Accordingly, the Court continues Timmins's commitment pursuant to 18 U.S.C. § 4241(d)(2)(A) until 9:30 a.m., August 15, 2005, at which time the Court will conduct another hearing to assess the status of Timmins's treatment and to determine whether Timmins may be returned to the District of Oregon to participate in further proceedings.

## CONCLUSION

For these reasons, the Court **GRANTS** the government's Motion

for Court Order Authorizing Involuntary Medication of Defendant (#123), continues Timmins's commitment for treatment as set out in this Opinion and Order, and orders further proceedings to monitor the progress of Timmins's treatment and mental status as herein specified.

IT IS SO ORDERED.

DATED this 23rd day of May, 2005.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge